# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### DECEMBER 1998 SESSION

FILED

February 2, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | No. 03C01-9803-CR-00097 |
| | ) | |
| Appellee | ) | |
| | ) | Hamilton County |
| vs. | ) | |
| | ) | Honorable Douglas A. Meyer, Judge |
| **LARRY DEWAYNE BROWN,** | ) | |
| | ) | (Revocation of Probation) |
| Appellant. | ) | |

FOR THE APPELLANT:

ARDENA J. GARTH
District Public Defender

WILLIAM A. DOBSON, JR.
Assistant Public Defender
(At hearing)

DONNA ROBINSON MILLER
(On appeal)
Assistant Public Defender
701 Cherry St. Suite 300
Chattanooga, TN 37402

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

CLINTON J. MORGAN
Assistant Attorney General
Criminal Justice Division
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN 37243-0493

WILLIAM H. COX, III
District Attorney General

C. LELAND DAVIS
Assistant District Attorney General
600 Market St. Suite 310
Chattanooga, TN 37402

OPINION FILED: _____

**AFFIRMED**

JAMES CURWOOD WITT, JR.
JUDGE

**OPINION**

The defendant, Larry Dewayne Brown, appeals the Hamilton County Criminal Court's revocation of his probationary sentence. As a result of the probation revocation, he is currently serving his sentence of eight years and one month for three counts of possession of cocaine with the intent to sell or deliver. In this appeal, the defendant contends that the state presented no substantial evidence that he had violated the terms of his probation and that the revocation was obtained in violation of his due process rights. Based upon a thorough reading of the record, the briefs of the parties, and the law governing the issues presented for review, we affirm the judgment of the trial court.

We have found it difficult to determine the sequence of events that led to the revocation of the defendant's probation. The record contains some serious gaps and much conflicting information. We have, however, pieced together the following chronology.

On April 5, 1990, the defendant pleaded guilty to three indictments for possession of cocaine with the intent to sell or deliver. The trial court sentenced him to serve concurrent sentences of six years as a Range I offender on two of the charges and eight years and one month as a Range II offender on the third. Apparently, the trial court ordered the defendant, who had already served 211 days, to serve the remainder of his sentence in Community Corrections.[1] After successfully completing some type of community corrections program and a period of house arrest, the defendant was placed on probation in July of 1991. A probation officer testified that the defendant was arrested for shoplifting in 1993. The defendant vigorously denied this allegation, and the state made no attempt to substantiate the arrest. On January 6, 1995, a probation violation report was filed

---

[1] The judgment form shows that the defendant was sentenced to incarceration in the Department of Correction. However, at the sentencing hearing, all parties agreed that the defendant began serving his sentence in Community Corrections.

2

alleging that the defendant had tested positive for cocaine in a routine drug test, that he had failed to report since December 7, 1994, and that he had failed to attend the After-Care program at CADAS. Although a capias issued shortly thereafter, the warrant was not served at that time. Documentary evidence introduced without objection through a probation officer shows that the defendant was arrested on October 30, 1995 for theft of property worth less than $500 and for possession of an illegal, dangerous weapon. He pleaded guilty the next day and was sentenced to serve 30 days on each conviction and to pay a $50.00 fine and court costs. The sentences were suspended contingent upon payment of the fine and costs and his good behavior.

On July 9, 1997, the defendant was arrested for "outstanding warrants in sessions court" in the same two misdemeanor cases and then served with the outstanding probation revocation capias. Sandra Caldwell, a probation officer, testified that the defendant pleaded guilty to the two 1995 misdemeanors on July 10, 1997.[2]

The defendant appeared to be confused about the events that took place in 1995 and on July 10, 1997. At first he said that he did not remember the arrests in 1995. Then, after a recess, he recalled the arrests. Finally, in response to the prosecutor's insistent questioning, he admitted that he had pleaded guilty on July 10 but thought that he was only supposed to pay a fine.[3]

---

[2] To clear up the confusion over the dates, the trial judge sent for the clerk of the court. She also reported that the convictions were entered on July 10, 1997 and that the defendant was given suspended sentences pending a partial payment of his fines. It appears from the record that the clerk was never sworn in as a witness. The defendant did not object to the appearance of the court clerk or her unsworn testimony. However, we have not considered her statements as part of the record in this case.

[3] The record indicates that counsel was not appointed until July 21, 1997; therefore, it appears that the defendant did not have an attorney present at whatever transpired on July 10. The state entered two printouts of the general sessions court docket into evidence at the hearing without objection. These printouts show that the defendant pleaded guilty to theft and possession of a dangerous weapon on October 31, 1995. In his brief, defense counsel alleges that the outstanding general sessions warrants were the result of the defendant's failure to pay the fines and court costs from his 1995 convictions. On July 10,

The record contains no proof that the defendant committed the probation violation alleged in the 1995 violation report. The record also contains no evidence of the applicable conditions of probation.

At the conclusion of the hearing, the trial judge found that the defendant had violated his probation based upon the defendant's perhaps inaccurate acknowledgment that he had been convicted in 1997 for the two 1995 misdemeanors.[4] He then ordered that the defendant serve his sentences as originally imposed.

On appeal, the defendant contends that the trial court abused its discretion by revoking his probation when the record contains no substantial evidence to support the revocation. The defendant also contends that the testimony of Sandra Caldwell, the probation officer, violated his due process right to confront the witnesses against him. We respectfully disagree.

The defendant did not assert in the trial court and does not claim in this court that his due process rights to be notified of the grounds for revocation were violated. See Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593 (1972).

The revocation of probation is committed to the sound discretion of the trial judge. See State v. Harkins, 811 S.W.2d 79, 80 (Tenn. Crim. App. 1991). In order for an abuse of discretion to occur, the reviewing court must find that the record contains no substantial evidence sufficient to support the conclusion of the

_____

when the defendant made a partial payment on the fine, the court released him from custody on those convictions but held him on the probation revocation warrant. We recognize that statements made in a brief are not evidence nor may they be considered part of the record on appeal. However, we include this information here because it provides a rational explanation for what otherwise is a rather puzzling series of events. Whether the defendant pleaded guilty on October 31, 1995 or on July 10, 1997 makes no difference in the resolution of the issues in this case.

[4] The defendant's contention that the trial court revoked his probation because he failed to pay court costs on the 1995 convictions is not supported by the record.

4

trial judge that the violation of the terms of probation has occurred. <u>Harkins</u>, 811 S.W.2d at 82; <u>State v. Delp</u>, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The trial court is required only to find that the violation of probation occurred by a preponderance of the evidence. Tenn. Code Ann. § 40-35-311(d) (1997). Furthermore, when probation is revoked, "the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension." Tenn. Code Ann. § 40-35-310 (1997). The trial judge retains the discretionary authority to order the defendant to serve the original sentence. <u>See</u> <u>State v. Duke</u>, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995).

In this instance, the defendant contends that the record lacks substantial evidence to support the trial court's revocation. Our review of the record, however, indicates that it contains competent evidence to support the trial court's finding that the defendant's "new" arrest and conviction violated the conditions of probation. The state placed into the record without any objection from the defendant printouts from the sessions court docket showing that the defendant had been convicted of two misdemeanor offenses on October 31, 1995. The defendant admitted that he pleaded guilty to those offenses although he was obviously uncertain of the date the judgments were entered. In his brief, the defendant concedes that the sessions court docket accurately reports his arrest and conviction for theft and illegal possession of a dangerous weapon in October, 1995. The thrust of the defendant's argument is that the trial court mistakenly believed that although the defendant was arrested in 1995 for those offenses, he had not pleaded guilty until July 10, 1997. Given the confusing nature of the testimony at the hearing, the trial court may have thought that the convictions were entered in July of 1997. The date the judgments were entered, however, is irrelevant. Proof of convictions for the 1995 offenses is a basis for the revocation of probation.

Even though we have not been asked to do so by the defendant, we have reviewed the issue of lack of notice of the ground for probation revocation.

5

The defendant was entitled to be informed of the conditions or requirements of his probation. The record contains no indication of what the full regimen of conditions were; however, "compliance with our state laws is an automatic condition" of probation. State v. Subblefield, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997). The state need not have proven that the defendant was prohibited from offending the criminal laws as a condition of probation, nor need it have shown that the defendant was aware of any such condition. The defendant was likewise entitled to be notified of the charge upon which revocation is based. Morrissey; Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). However, this due process right to notice "'calls for such procedural protections as the particular situation demands.'" Stamps, 614 S.W.2d at 73. The very nature of a "notice" right suggests that it may be waived. In the present case, the defendant did not object to the admission of evidence about the two new misdemeanor convictions, did not argue in the trial court that the new convictions were beyond the scope of the probation violation report and/or revocation warrant, and did not claim in this appeal that he had been deprived of notice that new convictions would serve as bases for revocation. In this situation, we have no choice but to conclude that the notice issue was waived. Tenn. R. App. P. 36(a).

The defendant also argues that the court violated his due process right to confront the witnesses against him by allowing Sandra Caldwell to testify instead of the probation officer who had actually been his supervisor.[5] The defendant correctly contends that although a probationer at a revocation hearing is not entitled to all of the procedural safeguards associated with a criminal trial, the due process clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution require that a probationer be afforded certain basic rights including the right to confront the state's witnesses. Black v.

---

[5] According to Ms. Caldwell's testimony, Gale Wyatt, the defendant's supervising officer, was attending her bridal shower at the time of the hearing.

<u>Romano</u>, 471 U.S. 606, 613, 105 S. Ct. 2254, 2258 (1985).[6] We are satisfied that the defendant was not denied this constitutional right.

First, the defendant had ample opportunity to object to Ms. Caldwell's testimony when she explained that she had never supervised the defendant. The record contains no objection to her testimony, and defense counsel declined to cross-examine her. As noted above, the trial court admitted the computer record of the defendant's 1995 convictions without any objection. The defendant did not lack the opportunity to challenge either the documentary evidence or to attack the basis of Ms. Caldwell's knowledge. Moreover, it is clear that the trial court did not rely upon the allegations in the probation officer's file or the January, 1995 probation violation report. The trial court had before it the uncontroverted record of the General Sessions Court in which the defendant was convicted and sentenced and the defendant's admission that he had pleaded guilty to two misdemeanors after he was placed on probation. Based on that evidence, the trial judge properly concluded that the defendant "did violate probation by a new arrest and convictions. . . ." The defendant's admission alone is substantial evidence sufficient to support the trial court's order. <u>State v. Regina Ann Owen</u>, No. 03C01-9707-CC-00271, slip op. at 3 (Tenn. Crim. App., Knoxville, June 22, 1998). We are unable to see how Ms. Caldwell's rather limited testimony violated the defendant's right to due process.

In addition, the defendant complains that the trial court should have continued the hearing until the officer who supervised the defendant was available and argues that the computer printouts are not competent evidence. However, the record contains no request for a continuance, and, as noted above, the defendant failed to object to the admission of the printouts. This court need not grant relief to

_____

[6] Those rights include: (a) written notice of the alleged violation; (b) the disclosure of evidence that supports the alleged violation; (c) the opportunity to be heard in person and to present evidence in support of his defense; (d) the right to confront the state's witnesses; (e) a neutral and detached trier of facts to hear the evidence; and (f) written findings of fact as to the reason for revocation. <u>Gagnon v. Scarpelli</u>, 411 U.S. 776, 786, 93 S. Ct. 1756, 1761-62 (1993); <u>State v. Wade</u>, 863 S.W.2d 406, 408 (Tenn. 1993).

a party who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error. Tenn. R. App. P. 36(a).

This court has stated that "a revocation decision is best tested by whether such an action would serve the ends of justice and be in the best interest of both the public and the defendant/appellant." State v. Mitchell, 810 S.W.2d 733, 736 (Tenn. Crim. App. 1991). The record demonstrates that once the more restrictive provisions of community corrections and house arrest were removed, this defendant was either unwilling or unable to abide by the conditions of his release into the community. This court will reverse an order of revocation only if the record contains no substantial evidence to support the trial court's finding. State v. Gabel, 914 S.W.2d 562, 564 (Tenn. Crim. App. 1995). In this case the record is not as complete as it should be. The judgments of the defendant's convictions as they appear in the record reflect TDOC sentences, and the technical record contained no documentation to show when or how such sentences were converted first to Community Corrections sentences and then to probated sentences. The conditions of probation were not proven. An unsworn witness was allowed to give evidence. The true technical nature of the convictions which ultimately served as the bases for revocation was never clarified. Greater care should be taken to build, preserve, and transmit to this court a full and accurate record of the proceedings in the lower court. Nevertheless, the record contains evidence that supports the trial court's finding and his order revoking the defendant's probation. That decision is clearly in the best interests of the both the public and the defendant himself.

We affirm the judgment of the trial court.

_____
JAMES CURWOOD WITT JR., Judge

CONCUR:


_____
DAVID G. HAYES, Judge

8

_____
JERRY L. SMITH, Judge